HOUSTON OIL CO. OF TEXAS v. WING.
(No. 160.)

(Court of Civil Appeals of Texas. Beaumont. March 1, 1917. Rehearing Denied April 18, 1917.)

1. BOUNDARIES ☞6 — LOCATION OF SENIOR SURVEY FROM JUNIOR SURVEY.

The surveyor who, as county surveyor, certified to the correctness of the field notes of the F. survey, having five years later located the O. survey, and tied its beginning N. W. corner to the S. E. corner of the F. survey, the F. survey may by reversal of calls be constructed from the known location of the O. survey, though none of the original bearing trees or corners of the F. survey were found on the ground.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 47–57.]

2. STIPULATIONS ☞14(1)—EFFECT.

It being stipulated that defendants are the owners of certain surveys, and plaintiff the owner of a certain survey, and that he is entitled to recover it if and to the extent it is not in conflict with their surveys, there being no conflict, no other question is open.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24, 28.]

Error from District Court, Polk County; L. B. Hightower, Sr., Judge.

Action by Wilson D. Wing against the Houston Oil Company of Texas and others. Judgment for plaintiff, and the named defendant brings error. Affirmed.

H. O. Head, of Sherman, and Parker & Kennerly and Fred L. Williams, all of Houston, for plaintiff in error. Andrews, Streetman, Burns & Logue, of Houston, and J. L. Manry, of Livingston, for defendant in error.

DAVIS, J. Wilson D. Wing instituted this suit in 1910 in the district court of Polk county, Tex., in the ordinary form of trespass to try title against the Houston Oil Company of Texas, Tyler County Lumber Company, and other defendants, to recover East Texas Railroad section No. 16, containing 640 acres of land, situated in Polk and Tyler counties. All the defendants, except Houston Oil Company of Texas and the Tyler County Lumber Company, were dismissed out of the suit, and upon a trial of the case before a jury, which was submitted on special issues, a verdict and judgment was rendered in favor of plaintiff, from which the defendant Houston Oil Company of Texas has appealed. All the parties to the suit, upon the trial of the case, entered into the following agreement:

"In order to facilitate a trial of the above numbered and styled cause, it is agreed by and between all parties hereto, through their respective attorneys, as follows: That the defendant Houston Oil Company of Texas is the legal and equitable owner of the M. Federspill and Jacob Buchman surveys in Polk county, Tex., and was such owner at the time this suit was instituted, and that said defendants Houston Oil Company of Texas and Tyler County Lumber Company are the legal and equitable owners of the Andreas Morales survey lying in Polk county, Tex.

"It is further agreed that the plaintiff, Wilson D. Wing, is the legal and equitable owner of East Texas Railroad section No. 16, situated in Polk county, Tex., and was such owner at the time that this suit was instituted, and said plaintiff, Wilson D. Wing, is entitled to recover the title and possession of said E. T. Railroad Company section No. 16 in this action, if said section is not in conflict with any of the surveys above named and owned by the defendants herein, and is entitled to recover the title and possession of said East Texas Railroad Company section No. 16 to the extent that same is not in conflict with the surveys above mentioned, if it appears that said East Texas Railroad Company section 16 is only partly in conflict with said surveys or any of them.

"It is expressly stipulated that this agreement is made only for the purpose of facilitating a trial of this suit, and shall not be construed to change the legal rules as to the burden of proof."

It is clear that this agreement left for determination in this suit only one issue, and that was: Where are the true locations of the Buchman survey, Federspill survey, the Morales survey, and East Texas Railroad Company survey, section No. 16? These true locations must be ascertained in order to determine whether or not East Texas Rail-

road Company section No. 16 and the Federspill survey conflict.

The trial court, upon the question of conflict as to these two surveys, submitted to the jury the following issue:

"Is the true location of the M. Federspill survey in conflict with the true location of East Texas Railway Company survey No. 16?"

This issue was answered by the jury in their verdict in the negative, therefore finding by their verdict that there was no conflict between East Texas Railroad survey, section No. 16, and the Federspill survey.

The testimony in the case upon this question is lengthy, and we do not care to burden this opinion by quoting same. We will say, however, that we have carefully read the evidence, and believe that the verdict of the jury on this issue is supported by a preponderance of the testimony.

The evidence discloses that East Texas Railroad Company survey, section No. 16, the Buchman survey, and the Federspill survey lie north of Village creek, and that a survey known as the O'Connor survey lies south of Village creek; that the O'Connor survey was located five years after the location of the Federspill survey; that the surveyor, who was county surveyor of Liberty county, certified to the correctness of the field notes of the Federspill survey, and five years thereafter located the O'Connor survey himself, and tied the beginning corner of the O'Connor survey, which is its northwest corner, to the southeast corner of the Federspill survey; that the O'Connor survey was the first survey constructed in that vicinity south of Village creek; that the true location of the O'Connor survey is not disputed; that in going upon the ground at the northwest corner of the O'Connor survey, and reversing the call, and running back for distance, an old line is found running north from the creek a short distance, and the marks on this line, being the west line of the Federspill survey, as claimed by defendants in error, are as old as the line called for. The evidence further discloses that in surveying out the Federspill and Buchman surveys, in accordance with their respective field notes, taking the northwest corner of the O'Connor survey as a starting point, these surveys fit Village creek exactly as called for, which is a very crooked creek, and that these surveys will not fit on this creek at any other place, and especially that these surveys do not fit where plaintiff in error claims they are located; that, while none of the original bearing trees or corners were found on the ground, yet the same character of timber was found at each corner as called for in the original survey; that at one of the corners a large red oak tree was found as called for in the original field notes, but it was down and so badly decayed that, if it had been marked, these marks had been destroyed by decay.

[1] Plaintiff in error contends that, since none of the original corners or known landmarks were found upon the ground in the location of the Federspill survey, as claimed by the defendants in error, it was error for the lower court to admit in evidence the field notes of the O'Connor survey, being a junior survey, and to allow defendants in error to construct the Federspill survey, a senior survey, from the true location of the O'Connor survey, a junior survey. Ordinarily this contention would be correct; but in this case the evidence discloses that in using the known location of the O'Connor survey, from which to construct the Federspill survey, it was not only used to construct the Federspill survey, but it led to the discovery of the unquestionably true location of the Federspill survey; therefore we do not believe the court erred in admitting this testimony, especially where it was shown that the surveyor who certified to the correctness of the field notes of the Federspill survey only five years thereafter made the O'Connor survey himself, and tied it to the Federspill survey, and unquestionably, from the facts proved, knew where the lines and corners of the Federspill survey were on the ground.

[2] Plaintiff in error also contends that the location of the Buchman and Federspill surveys, as claimed by it, had been recognized by the general land office since 1862, under a survey made by one Baumgarten, and that since that time the general land office has patented lands over the Buchman and Federspill surveys, where defendants in error claimed these surveys were originally located, and that the plaintiff in error is claiming said land under the Baumgarten location, under color of title from the sovereignty of the state, evidence of the appropriation of which is on the county records and in the general land office, and that said land is "land titled or equitably owned under color of title," and is therefore, regardless of whether it is the original location of same, not subject to survey, location, or patent as vacant public land, as provided in article 14, § 2, of the state Constitution.

It is true that the evidence shows that the location of the land claimed by plaintiff in error as the Buchman and Federspill surveys was located by Baumgarten while acting in his official capacity, and that maps of the general land office have recognized this location by patenting land over the location of the Buchman and Federspill surveys, which defendants in error contend was the original location of same; but, in view of the agreement entered into by the parties to this suit, which resolved the whole case to the sole and only issue of the true location of these surveys, is plaintiff in error now, under said agreement, in a position to contend that, even if the true location of these original surveys is not where it contends they should

be, yet, because of the location of these surveys by Baumgarten in 1862, and because of the appropriation of these surveys as located by Baumgarten, which is reflected by the county records and in the general land office, and because of the recognition of the Baumgarten locations by the general land office since 1862; and the placing of other surveys over the Buchman and Federspill surveys, where defendant in error claims they are located, it should be allowed to recover the land as located and claimed by it under color of title, because of the provisions of the Constitution (article 14, § 2)? With this contention we do not agree, for the reason that the evidence is conclusive that the Baumgarten location of these surveys, as recognized by the general land office since 1862, was erroneous; that East Texas Railroad section 16 and the Federspill survey do not conflict, and the question of the true location of these surveys was, by agreement, made the only question in the case.

The judgment of the lower court is therefore affirmed; and it is so ordered.

HIGHTOWER, C. J., being disqualified, did not sit.